IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES RICHARD DUDLEY,

    **Plaintiff,**

v.                                                    CASE NO. 22-3188-JWL

(FNU) WARREN, SST Officer,
Hutchinson Correctional Facility,

    **Defendant.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se action under 42 U.S.C. § 1983. Although Plaintiff is currently incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas, his claim arose during his incarceration at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). Plaintiff alleges that in March 2021, defendant Warren, a response team member, subjected him to excessive force by deploying pepper spray on him after he had stopped fighting with another inmate.

On October 24, 2022, the Court entered a Memorandum and Order (Doc. 10) ("M&O") finding that the proper processing of Plaintiff's claim could not be achieved without additional information from appropriate HCF officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). The Court ordered the HCF officials to prepare and file a *Martinez* Report (the "Report). The Court's Memorandum and Order provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 10, at 1.) The Report (Doc. 25) has now been filed and Plaintiff has filed a response (Doc. 34) to the Report.

1

I. **Nature of the Matter before the Court**

Plaintiff alleges that Defendant Warren, an SST Officer at HCF, responded to the scene when Plaintiff was fighting with another inmate on March 8, 2021. Plaintiff alleges that although he had stopped fighting when Warren arrived, Warren sprayed Plaintiff in the face with pepper spray. Plaintiff claims Warren "just did it because he thinks he can get away with it. He laughed at me in the chow hall when I got out of segregation." (Doc. 1, at 2.) Plaintiff claims that Warren used excessive force and seeks compensatory and punitive damages. *Id*. at 5.

Plaintiff attaches a "Disposition of Disciplinary Case" to his Complaint. (Doc. 1–1, at 3.) Plaintiff pleaded guilty to fighting and interfering with official duties, and received 30 days in disciplinary segregation. *Id*. The Disciplinary Report written by Defendant Warren provides that:

> There was a level A response called in B2 cellhouse. I arrived to B2 cellhouse, to inmate Dudley #91359 and inmate Whitfield #90393 fighting. I then verbally ordered inmate Dudley and Whitfield to stop fighting and get on the ground. Inmate Whitfield backed up and stopped fighting and inmate Dudley swung at him again so I sprayed a one second burst hitting Dudley in the face. After spraying, both inmates stopped and were put in restraints, then taken to segregation to strip out and decontaminate. EOR

*Id*. at 5. At an additional disciplinary hearing for disobeying orders, Plaintiff stated that he had already stopped fighting when Warren sprayed him. *Id*. at 6. Staff reviewed the video coverage of the incident and found that:

> The video shows Dudley attack Whitfield. Dudley runs at Whitfield and punches him. They are punching each other next to Whitfield's cell. After they separate, Dudley starts to walk up to Whitfield again. Whitfield punches Dudley in the face. They separate and that is when CPL Warren arrives. CPL Warren sprays Dudley in the face as Warren walks by Dudley. After that both inmates are cuffed up.

*Id*. The hearing officer found Plaintiff not guilty.

Plaintiff filed a grievance in which he alleged that he was walking towards SST Warren to be cuffed up and Warren sprayed him in the face with pepper spray for no reason. *Id*. at 8. Plaintiff's grievance was denied, with a finding that "[a]ll use of force incidents are documented and investigated. Per the reports, all involved staff acted within policy and procedure." *Id*. at 11.

The Report submitted by HCF officials summarizes Plaintiff's conviction and disciplinary violations as follows:

> Plaintiff has six active felony convictions. Plaintiff is currently serving sentences for the convictions of battery of a city or county employee (2 counts) and of aggravated battery (1 count) all committed in Douglas County in 2007 or 2008, resulting [in] the beginning of his incarceration on April 4, 2008. After entering prison, plaintiff was convicted of Battery of a state corrections officer or employee in 2010, of attempted aggravated battery in 2012 and of soliciting arson in 2016. Petitioner has received 319 disciplinary violations since his incarceration began in 2008, the majority of which were Class I violations, the most serious kind. Petitioner's earliest possible release date is presently March 9, 2036. (See Kasper Sheet Exhibit 1).

(Doc. 25, at 3); *see also* Doc. 25–1.

Regarding the March 8, 2021 incident, the Report provides in part that:

> Special Security Team officers defendant Austin Warren and Joel Cowan responded to the fight, entering from the front of the cellhouse and running toward the back. As they approached the fighters, both officers were yelling to defendant and Whitfield to stop fighting and to get down. The security video, which has no sound, reflects two different views of the incident. (Exhibits 2, 3, 9 & 10)
> The camera near the fight, which points down the run toward the front and showed the approach of the officers. That camera reflects parts of the fight and shows one last engagement between the two inmates seeming to end a couple of seconds before the officers arrived. (Exhibit 10)
> The camera shooting down the front pointing back toward the fight shows the officers running down the length of the cellhouse. From that angle the other fighter, Whitfield, is partly visible as the officers arrive because he is behind the stairway.

Plaintiff appears to have separated from Whitfield, just before the officers arrive. (Exhibit 10)

It appears that defendant briefly sprayed plaintiff as he ran past plaintiff and placed handcuffs on Whitfield, who had immediately knelt down and put his hands behind his back. Whitfield was not sprayed. Cowan then put plaintiff against the wall and restrained him. (Exhibit 10)

\* \* \* \*

From the perspective of the two responding officers, defendant and Corporal Cowan, received notice of the fight. They ran to the cell house, up the stairs and observed plaintiff and Whitfield fighting at the end of the cell house run. As the officers approached the fight they were both yelling to the fighters to stop fighting and to get down. The stairway to the upper level of B-2 partially obscured the fighters as officers approached. Both officers went to the left of the stairs and couldn't clearly see the other fighter, but did see that plaintiff had just engaged Whitfield as the officers approached. Plaintiff did not immediately get down as instructed, but did not further fight with Whitfield. Plaintiff seemed to turn and square off toward defendant as defendant ran by to restrain Whitfield. Plaintiff was sprayed in the face with a short burst, not the usual three second spray they are authorized to use. Plaintiff never did get on the ground, but was placed against the near wall and handcuffed by officer Cowan. Plaintiff put handcuffs on Whitfield, who knelt down and was not sprayed. (Exhibits 2 & 3)

Plaintiff received disciplinary report 21-03-080 for disobeying defendant's orders. The report was issued by defendant. From the record, it appears that defendant was not called to testify. The hearing officer viewed the security video and concluded that the video showed defendant sprayed plaintiff after the combatants separated. Notably, the video has no audio with it. Plaintiff was found not guilty. (Exhibit 4)

Plaintiff received disciplinary report 21-03-101 for fighting and for interfering with official duties. The report was issued by Captain Price based on a review of the security video. Before the hearing was held, plaintiff pled guilty to both charges. (Exhibit 5)

\* \* \* \*

Plaintiff's medical record from March 1, 2021, to March 30, 2021, does not reflect treatment relating to being sprayed with chemical spray on March 8, 2021. The evaluation performed less than two hours after the fight and use of force reflected that plaintiff lost part of a front tooth in the fight and that

4

it hurt. Regarding being sprayed with chemical by defendant, plaintiff remarked that it wore off pretty fast and plaintiff denied any respiratory issues. Plaintiff reported that his injuries were from the fight and not from the use of force. Plaintiff reported "We were going at it pretty good. It was a good fight.". (Medical Record, Exhibit 8 (3/8/21 @ 8:10 a.m.))

*Id*. at 4–7.

The Report provides that "[i]n the light of reflection after the fact, it appears that plaintiff had just stopped fighting mere seconds when he was sprayed. It also appears that plaintiff did not go down and submit to restraints as directed." *Id*. at 7.

Defendant Warren's affidavit submitted with the Report provides that:

> The two inmates had exchanged blows as we were approaching and then stepped back a step or two. I approached inmate Dudley and applied a short burst of O.C. spray to Dudley's face as I ran past to restrain the other inmate, who promptly knelt down and submitted to being handcuffed by me. There was no reason to spray this inmate because he was compliant.
> In the heat of the moment, I did not think Mr. Dudley was necessarily done with the fight and he had not shown any intention of complying with my order to stop fighting and to get down. I watched Mr. Dudley's body language and saw subtle language that made me think he might be preparing to re-engage in a fight with either inmate Whitfield or with one of the responding officers. If you watch the video you will see that I didn't take my chemical spraying device off my duty belt and simply tilted it up as I ran by. I thought it was necessary and reasonable to apply the spray as I ran by Mr. Dudley so Corporal Cowan would be more easily able to restrain him. I was authorized by my training to apply a three second amount of spray, but only used a second or so on Mr. Dudley.
>
> * * * *
>
> Nothing I did or did not do was for the purpose of causing Mr. Dudley any unnecessary discomfort. He was sprayed because he did not comply with orders to get down so he could be safely restrained and looked like he might continue the fight. Things happened very fast and my goal was to stop the fight, restrain the fighting inmates, remove them from the areas as quickly as

5

>possible and do all that while keeping responding officers uninjured.

(Doc. 25–2) (internal paragraphs omitted).

Plaintiff's response to the Report alleges that the majority of his 319 disciplinary violations are "trumped up by officers as the officers have a natural dislike of Plaintiff." (Doc. 34, at 1.) Plaintiff disputes that Whitfield immediately knelt down, and claims Warren had to talk to him first. *Id*. at 2.

Plaintiff disputes Defendant's allegation that Plaintiff seemed to turn and square off toward Defendant as Defendant ran by to restrain Whitfield. *Id*. Plaintiff states that "[t]he security video shows Plaintiff deliberately put his hands down to his sides hands open and Defendant then sprays Plaintiff in the face and then seems to try and get Plaintiff to cuff up but then Corporal Cowan directs Defendant to go cuff up Whitfield." *Id*. at 3 (capitalization added). Plaintiff does not dispute that he suffered no injury from the pepper spray. *Id*. at 4

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court

liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*,

7

561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). Plaintiff's excessive force claim arises under the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (stating that "claims of excessive force involving convicted prisoners arise under the Eighth Amendment").

The Eighth Amendment's prohibition against "cruel and unusual punishments" applies to the treatment of inmates by prison officials. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Prison officials violate inmates' Eighth Amendment rights when they subject them to the "unnecessary and wanton infliction of pain." *Id*. at 319. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id*. at 9–10.

"[A]n excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (citation omitted). To establish the objective component, Plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson*, 503 U.S. at 9 (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

To satisfy the subjective prong, a plaintiff must show that the officials acted with a sufficiently culpable state of mind. In determining "whether prison officials applied force maliciously and sadistically or, rather, in good faith, we consider (1) the need for the force, and (2) whether the officers used a disproportionate amount of force." *Redmond v. Crowther*, 882 F.3d 927, 937 (10th Cir. 2018). Failure to comply with an order can be grounds for the use of force. *See id.* at 938. Prisoners "cannot be permitted to decide which orders they will obey, and

when they will obey them." *Id*. (citation omitted).

In this case, Plaintiff did not kneel or turn around to be cuffed, but rather took steps toward the arriving officers. Defendant Warren disbursed a quick spray from the cannister on his belt as he walked past Plaintiff to cuff the other inmate. This was a split-second decision made in the course of responding to an inmate fight.

In *Greene v. Corrections Corp. of America*, the plaintiff was attacked by another inmate and then subdued and restrained the other inmate until prison officials arrived. *Greene v. Corrections Corp. of America*, 401 F. App'x 371, 373 (10th Cir. 2010) (unpublished). When the officers told the inmates to "break it up," Green complied and freed the other prisoner's arms, which allowed the prisoner to punch Green in the face. *Id*. The officer then sprayed Green in the face with pepper spray, but did nothing to the other prisoner. *Id*. The Tenth Circuit found that Green's allegations failed to establish an excessive force claim, that the officer had reason to use some force, and that the use of the pepper spray was not excessive under the circumstances. *Id*. at 376 (stating that "Green admits that he was physically restraining another prisoner *immediately before* Medill used the pepper spray") (emphasis added).

A sufficiently culpable state of mind (i.e., malicious and sadistic) may be inferred where "there can be no legitimate purpose for the officers' conduct." *White v. Stephenson*, 2020 WL 2832380, at *8 (D. Colo. 2020) (quoting *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006)), *aff'd* 833 F. App'x 217 (2021). Although Plaintiff suggests that at some later date Defendant Warren laughed at Plaintiff, he has offered no evidence that Warren acted with a culpable state of mind during the incident. In *White*, the plaintiff claimed that during an attack by other inmates the defendant sprayed plaintiff with pepper spray when he was on the ground being assaulted by three other inmates. *Id*. at *1. Plaintiff argued that the defendant "had no

legitimate purpose in spraying him, the obvious victim of an attack, and therefore her culpable state of mind can be inferred from her conduct." *Id*. at *9.  The court stated that it could not find that the officer's actions were a clearly established Eighth Amendment violation.  *Id*. at *10 (finding defendant was entitled to qualified immunity and noting that Tenth Circuit cases establish that the subjective prong cannot be inferred from this type of conduct alone); *see also Bridges v. Frenandez*, 2018 WL 6011695, at *6 (D. Colo. 2018) (where plaintiff had physically assaulted officers in the past, had recently communicated statements understood by the officers to be threats, and plaintiff ignored the officer's order when they arrived at his cell, the court found that even if the application of pepper stray was unnecessary in hindsight, other cases in the Tenth Circuit demonstrate that it did not violate a clearly established constitutional right).

"When the 'ever-present potential for violent confrontation and conflagration,' . . . ripens into *actual* unrest and conflict, the admonition that 'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators,' . . . carries special weight." *Whitley*, 475 U.S. at 321 (internal citations omitted).  "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Id*. at 321–22, (quoting  *Bell v. Wolfish,* 441 U.S. at 547, 99 S. Ct. at 1878).  The Tenth Circuit has stated that:

> In assessing excessive-force claims, we have recognized that a prison guard, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself. . . . Therefore, review of a claim of the use of excessive force in a prison is to be deferential to the prison. . . . In particular, when prison officials must act to preserve internal order and discipline, we afford them wide-ranging deference. . . . Although this deference does not insulate from review actions taken in bad faith and for no legitimate purpose, neither does it permit courts to freely substitute

their judgment for that of officials who have made a considered choice.

*Thompson v. Orunsolu*, 798 F. App'x 288, 291 (10th Cir. 2020) (internal citations and quotations omitted).

"[T]o succeed on an Eighth Amendment claim [Plaintiff] must demonstrate more than 'a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.' . . . The evidence must support an inference that force was applied 'maliciously and sadistically for the very purpose of causing harm.'" *Stevenson v. Cordova*, 733 F. App'x 939, 943 (10th Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. at 320–21).

Plaintiff's allegations fail to state a claim of excessive force. The Court questions whether the short burst of pepper spray administered in this case was objectively harmful enough to establish a constitutional violation. Regardless, Plaintiff has failed to show that that the force was applied maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. Particularly in light of the deference afforded prison officials, the Court finds Plaintiff's allegations do not demonstrate the subjective prong of an excessive force claim.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated March 27, 2023, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**
